UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

FELICE PACE, et al.,

        Plaintiffs,

    v.

CHARLTON H. BONHAM, et al.,

        Defendants.

Case No.  12-cv-05610-WHO

**ORDER GRANTING MOTION TO STRIKE**

Re: Dkt. No. 45

On September 25, 2013, the Court heard argument on defendants' motion to dismiss or strike portions of plaintiffs' Second Amended Complaint (SAC). For the reasons discussed below, after having considered the record and the arguments made, the Court GRANTS the motion to strike.

## BACKGROUND

Plaintiffs in this Clean Water Act case allege that defendants Charlton H. Bonham and Stafford Lehr (representatives of the California Department of Fish and Wildlife ("Department")) violate the Clean Water Act ("CWA"), 33 U.S.C. § 1251 *et seq.*, by releasing fish into waters of the United States without necessary permits. *See* SAC ¶ 1. Specifically, plaintiffs contend that when the Department releases native and non-native fish into lakes in California for purposes of stocking the lakes it is discharging "biological materials" that are "pollutants" under the CWA, § 1362(6). SAC ¶¶ 9, 13, 18. Plaintiffs allege that release of the fish harms the biological integrity and "food webs" of the lakes by altering nutrient cycling and algal production and impacting other fish, amphibians, and organisms in those lakes. *Id.* ¶ 13. Plaintiffs allege that defendants introduce the fish and water into the lakes by packstock (in oxygenated plastic bags) and by aerial drop. *Id.* ¶¶ 10-11. Solely with respect to the fish introduced by aerial drop, plaintiffs allege that: "Mortality rates from the aerial stocking of fish often approach 50%, as a result of the transport,

United States District Court
Northern District of California

1  drop, or because these stocked fish do not feed or survive well after stocking." *Id.* ¶ 10.  Plaintiffs

2  do not make any allegations regarding mortality of fish stocked by packstock.

3      Defendants move to dismiss all allegations regarding: (1) defendants' release of live fish

4  from airplanes; (2) defendants' release of water from airplanes (along with live fish); (3)

5  defendants' release of live fish from containers carried by packstock; and (4) defendants' release

6  of water from containers carried by packstock (along with live fish), arguing those practices are

7  not in violation of the CWA under Ninth Circuit precedent.  In the alternative, defendants move to

8  strike the following from the SAC:  (1) "and by canisters borne by packstock" (page 2, line 6); (2)

9  paragraph 11 (page 4, lines 9 to 13); (3) "or packstock" (page 4, line 15); (4) paragraph 16 (page 5,

10  lines 11 and 12); (5) "and discrete conveyances carried by packstock, and by other confined and

11  discrete conveyances" (page 5, lines 24 and 25) and (6) ", packstock, or other means that

12  constitute a point source of pollution" (page 6, lines 2-3).  Defendants "do not contest" and do not

13  move to dismiss or strike plaintiffs' allegations that aerial fish stocking results in dead fish.

14  Motion at 1.

15      Plaintiffs oppose the motion, arguing that all of the allegations state a claim under the

16  CWA.

17                                    **LEGAL STANDARD**

18      Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint

19  if it fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to

20  dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its

21  face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This "facial plausibility" standard

22  requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant

23  has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While courts do not require

24  "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to

25  relief above the speculative level." *Twombly*, 550 U.S. at 555.

26      In deciding whether the plaintiff has stated a claim upon which relief can be granted, the

27  court must assume that the plaintiff's allegations are true and must draw all reasonable inferences

28  in the plaintiff's favor.  *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

1    However, the court is not required to accept as true "allegations that are merely conclusory,

2    unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536

3    F.3d 1049, 1055 (9th Cir. 2008).

4          Under Rule 12(f), a court "may strike from a pleading an insufficient defense or any

5    redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. Civ. P. 12(f).  The

6    function of a motion to strike under Rule 12(f) is to avoid the expenditure of time and money that

7    must arise from litigating immaterial and impertinent issues by dispensing of those issues before

8    trial.  *See Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*,

9    510 U.S. 517 (1994) (citation omitted).

10   **DISCUSSION**

11         The Clean Water Act "aims to restore and maintain the 'chemical, physical and biological

12   integrity of [the] Nation's waters.'"  *Association to Protect Hammersley v. Taylor Resources*

13   (*Hammersley*), 299 F.3d 1007, 1009 (9th Cir. 2002) (quoting 33 U.S.C. § 1251(a)).  Under the

14   CWA any "discharge" of a pollutant from a point source into navigable waters of the United States

15   is unlawful unless the discharge is covered by an NPDES permit.[1]  *Id*.  The Act defines "pollutant"

16   as:

17           dredged spoil, solid waste, incinerator residue, sewage, garbage,
     sewage sludge, munitions, chemical wastes, biological materials,

18           radioactive materials, heat, wrecked or discarded equipment, rock,
     sand, cellar dirt and industrial, municipal, and agricultural waste

19           discharged into water.

20   33 U.S.C. § 1362(6) (emphasis added).  The question at issue here is whether the Department's

21   practice of stocking fish in lakes is a discharge of "biological materials" covered by the CWA and,

22   therefore, illegal without the necessary NPDES permit.

23   **I.   INTRODUCTION OF LIVE FISH**

24         Defendants argue that this case is controlled by the Ninth Circuit's decision in

25   *Hammersley*.  In that case the Ninth Circuit considered how to define "biological materials" and

26   concluded that it means "the waste product of a human or industrial process."  299 F.3d at 1017.

27

28   [1] Under 33 U.S.C. § 1311(a) and § 1342, discharges of pollutants must be covered by a National
     Pollution Discharge Elimination System (NPDES) permit.

3

United States District Court
Northern District of California

At issue in *Hammersley* was the farming of mussels in Puget Sound.  The *Hammersley* plaintiffs contended that byproducts released by mussels – introduced and grown by the defendant company – were biological material pollutants under the CWA.  The Ninth Circuit found that the definition of "biological materials" was not readily apparent and, using the doctrine of *ejusdem generis*, defined the term in reference to other specific examples of pollutants listed in the statute. *Id.* at 1016.  Comparing "biological materials" to radioactive materials, garbage, and sewage sludge that end up in waters as the result of human activity, the Court found that "mussel shells, mussel feces and other natural byproduct of live mussels do not appear to be the type of materials the drafters of the Act would classify as 'pollutants.'" *Id.*  After considering Congressional intent, the Court held that "biological materials" covered by the Act were the "waste product of a transforming human process" or "the waste product of a human or industrial process."  *Id.* at 1017.

Applying the *Hammersley* definition here, the Department's introduction of live fish for stocking lakes cannot be considered the waste product of a transforming human or industrial process.  In other words, the fish entering a lake are not the by-product of a human activity, like running a hydro-electric facility (*National Wildlife Federation v. Consumers Power Co.*, 862 F.2d 580 (6th Cir. 1988)), spreading liquid manure on a field (*Concerned Area Residents for the Env't v. Southview Farm*, 34 F.3d 114, 117 (2d. Cir. 1994)), or taking fish from a water body, processing the fish and returning the heads, fins and internal residuals back to that body of water (*Ass'n of Pacific Fisheries v. EPA*, 615 F.2d 794, 802 (9th Cir. 1980)).  Instead, introduction of the live fish is the purpose and goal of the Department's stocking program.

The fact that plaintiffs in this case have alleged that the Department's stocking "alters the physical and biological integrity" of the lakes does not change this Court's conclusion.  While the Court in *Hammersley* felt their analysis was "strengthened" by the lack of allegation or evidence in the record that the shellfish discharge there caused any identifiable harm to Puget Sound and issued their decision with the "caveat" that the record did not indicate that the materials discharged by the shellfish were released in a concentration significantly greater than would otherwise be found in Puget Sound, 299 F.3d 1017 n.9, the Court looked to the harm issue only as added support for their interpretation of the ambiguous statutory term "biological materials."  This Court

United States District Court
Northern District of California

United States District Court
Northern District of California

1    is not charged with construing "biological materials" anew, but simply applying the *Hammersley*

2    Court's definition of "biological materials" as a "waste product of a human or industrial process."

3            Similarly, the fact that some of the live fish being stocked are not native or could not

4    otherwise be naturally sustained does not alter the Court's conclusion.  In *Northwest*

5    *Environmental Defense Center v. EPA* (*NEDC*), 537 F.3d 1006 (9th Cir. 2008), in determining

6    that the EPA acted *ultra vires* in excluding marine ballast discharges from CWA coverage, the

7    Ninth Circuit found in passing that the term "biological materials" includes "invasive species."  *Id*.

8    at 1021.  That finding, however, does not undermine the holding in this case because the invasive

9    species at issue there – non-native zebra mussels and other organisms – were discharged as waste

10   in the ballast water of container ships.  The *NEDC* Court's passing reference is not inconsistent

11   with *Hammersley*, because discharge of the organisms at issue was the waste product of a human

12   or industrial process.

13           Plaintiffs also rely on *U.S. Public Interest Research Group v. Atlantic Salmon of Maine*,

14   215 F.Supp.2d 239 (D. Me. 2002).  In that case the District Court found that release of non-native

15   salmon, which escaped from a salmon farm, was discharge of a pollutant under the CWA.  *Id*. at

16   247.  However, the District Court's holding is likewise consistent with *Hammersley*.  The escaped

17   non-native salmon – along with the other pollutants including copper, chemicals, and antibiotics,

18   *id*. at 248 – were waste products from a human or industrial process.

19           Finally, in *Hammersley*, the Ninth Circuit noted that Gallo mussels were not native to

20   Puget Sound, but were introduced in 1970s or 1980s.  That fact did not alter the Court's

21   conclusion that discharges from the non-native mussels were not pollutants under the CWA.  299

22   F.3d at 1010 & n.1.[2]

23           For the foregoing reasons, the Court finds that the claims in the SAC regarding the

24   _____

25           [2] The Court notes that the alleged environmental impacts of the Department's stocking
     program are currently being reviewed, as plaintiff Wild Earth Advocates and others challenged the
26   Department's Environmental Impact Report/Environmental Impact Statement under the California
     Environmental Quality Act.  *See* Exhibit C to Defendants' Request for Judicial Notice [Docket
27   No. 20-4].  This Court is bound to apply the *Hammersley* Court's definition of biological materials
     rather than attempt a review of the alleged environmental impacts of stocking live fish in
28   Californian lakes.

1   introduction of live fish are not actionable under the CWA.

## II. INTRODUCTION OF WATER

Defendants also argue that plaintiffs' allegations regarding the release of water (*see e.g.*, "[t]he water used to release fish can harbor non-native species of aquatic plans, [sic] invertebrates, and fish that is introduced into the lake being stocked," SAC ¶ 16) is not actionable because there are no further allegations in the complaint regarding the release of water and the charging allegations allege a violation of the CWA only because of "[t]he addition of these fish." *Id*. ¶ 18; *see* Motion at 14.[3]  Plaintiffs do not address this argument in their opposition and did not address it at oral argument.[4]  The Court finds that despite multiple opportunities to address this deficiency in their pleadings, plaintiffs have not done so.  Given that plaintiffs have not opposed defendants' argument on its substance, the Court finds that plaintiffs' allegation regarding the release of water (associated with the release of fish) is not actionable as pled.

## III. REMEDY

Having found that the allegations regarding introduction of live fish and the introduction of water are not actionable, the question becomes whether to dismiss or strike those allegations.  As an initial matter, the Court finds that because there is only one cause of action under the Clean Water Act, and the challenged allegations are not clearly separable claims, dismissal under 12(b)(6) is not appropriate.  However, the Court finds that in order to streamline the litigation, and remove what are now immaterial allegations, striking the non-actionable allegations is the better course.  *See e.g., Thompson v. Paul*, 657 F. Supp. 2d 1113, 1130 (D. Ariz. 2009) (finding that a Rule 12(b)(6) motion may be used to strike certain allegations in support of a claim, where the underlying claim itself is not challenged).  As such, the Court GRANTS defendants' motion to strike and strikes the following portions of the Second Amended Complaint:  (1) "and by canisters

---

[3] Defendants also argue that the transfer of water (and any materials already in that water) is exempt from the requirement to obtain a Clean Water Act permit. 40 C.F.R. § 122.3(i).
[4] This issue was also raised in the Motion to Dismiss the First Amended Complaint and not addressed by plaintiffs either in their opposition to that motion or in their Second Amended Complaint.  *See* Docket No.20 at 8; Docket No. 25 at 2 n.1.  The arguments raised in the prior motion to dismiss were not ruled on substantively and the motion was denied as moot in light of plaintiffs' request to file the Second Amended Complaint.  *See* Docket No. 42.

United States District Court
Northern District of California

borne by packstock" (page 2, line 6); (2) paragraph 11 (page 4, lines 9 to 13); (3) "or packstock"

(page 4, line 15); (4) paragraph 16 (page 5, lines 11 and 12); (5) "and discrete conveyances carried

by packstock, and by other confined and discrete conveyances" (page 5, lines 24 and 25) and (6) ",

packstock, or other means that constitute a point source of pollution" (page 6, lines 2-3).

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS

defendants' Motion to Strike.

**IT IS SO ORDERED**.

Dated: September 30, 2013



_____

WILLIAM H. ORRICK
United States District Judge

United States District Court
Northern District of California