1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7     FELICE PACE, et al.,

                 Plaintiffs,                    Case No.  12-cv-05610-WHO

8

      v.                                        **ORDER DISMISSING SECOND**
9                                               **AMENDED COMPLAINT (REVISED)**

10    CHARLTON H. BONHAM, et al.,                Re: Dkt. Nos. 45, , 57

                 Defendants.
11

12           Currently before the Court, pursuant to the parties' stipulation dated October 29, 2013 and

13    the Court's modified order thereon (Docket No. 66), is defendants' Motion to Dismiss plaintiffs'

14    Second Amended Complaint (Revised), Docket No. 67.  For the reasons discussed below, the

15    Court GRANTS defendants' motion to dismiss and DISMISSES the Second Amended Complaint

16    (Revised) WITH PREJUDICE.

17                                            **BACKGROUND**

18           Plaintiffs in this Clean Water Act case allege that defendants Charlton H. Bonham and

19    Stafford Lehr (representatives of the California Department of Fish and Wildlife ("Department"))

20    violate the Clean Water Act ("CWA"), 33 U.S.C. § 1251 *et seq.*, by releasing fish into waters of

21    the United States without necessary permits.  *See* SAC ¶ 1.  Specifically, plaintiffs contend that

22    when the Department releases native and non-native fish into lakes in California for purposes of

23    stocking the lakes it is discharging "biological materials" that are "pollutants" under the CWA, §

24    1362(6).  SAC ¶¶ 9, 13, 18.   Plaintiffs allege that release of the fish harms the biological integrity

25    and "food webs" of the lakes by altering nutrient cycling and algal production and impacting other

26    fish, amphibians, and organisms in those lakes.  *Id.* ¶ 13.   Plaintiffs allege that defendants

27    introduce the fish and water into the lakes by packstock (in oxygenated plastic bags) and by aerial

28    drop.  *Id.* ¶¶ 10-11.

United States District Court
Northern District of California

1    Defendants move to dismiss the Second Amended Complaint (Revised), arguing that their

2  fish stocking practices do not violate the CWA under Ninth Circuit precedent.  Plaintiffs oppose

3  the motion, contending that their allegations state a claim under the CWA.

4                                     **LEGAL STANDARD**

5    Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint

6  if it fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to

7  dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its

8  face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This "facial plausibility" standard

9  requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant

10 has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While courts do not require

11 "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to

12 relief above the speculative level." *Twombly*, 550 U.S. at 555.

13   In deciding whether the plaintiff has stated a claim upon which relief can be granted, the

14 court must assume that the plaintiff's allegations are true and must draw all reasonable inferences

15 in the plaintiff's favor.  *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

16 However, the court is not required to accept as true "allegations that are merely conclusory,

17 unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536

18 F.3d 1049, 1055 (9th Cir. 2008).

19                                       **DISCUSSION**

20   The Clean Water Act "aims to restore and maintain the 'chemical, physical and biological

21 integrity of [the] Nation's waters.'" *Association to Protect Hammersley v. Taylor Resources*

22 (*Hammersley*), 299 F.3d 1007, 1009 (9th Cir. 2002) (quoting 33 U.S.C. § 1251(a)).  Under the

23 CWA any "discharge" of a pollutant from a point source into navigable waters of the United States

24 is unlawful unless the discharge is covered by an NPDES permit.[1]  *Id*.  The Act defines "pollutant"

25 as:

26        dredged  spoil,  solid  waste,  incinerator  residue,  sewage,  garbage,

27 _____

28 [1] Under 33 U.S.C. § 1311(a) and § 1342, discharges of pollutants must be covered by a National
Pollution Discharge Elimination System (NPDES) permit.

2

*United States District Court*
*Northern District of California*

1
2

> sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharged into water.

3   33 U.S.C. § 1362(6) (emphasis added).  The question at issue here is whether the Department's

4   practice of stocking fish in lakes is a discharge of "biological materials" covered by the CWA and,

5   therefore, illegal without the necessary NPDES permit.

6   **I.   INTRODUCTION OF FISH**

7          Defendants argue that this case is controlled by the Ninth Circuit's decision in

8   *Hammersley*.  This Order agrees.  In *Hammersley*  the Ninth Circuit considered how to define

9   "biological materials" and concluded that it means "the waste product of a human or industrial

10  process."  299 F.3d at 1017.  At issue in *Hammersley* was the farming of mussels in Puget Sound.

11  The *Hammersley* plaintiffs contended that byproducts released by mussels – introduced and grown

12  by the defendant company – were biological material pollutants under the CWA.  The Ninth

13  Circuit found that the definition of "biological materials" was not readily apparent and, using the

14  doctrine of *ejusdem generis*, defined the term in reference to other specific examples of pollutants

15  listed in the statute.  *Id*. at 1016.  Comparing "biological materials" to radioactive materials,

16  garbage, and sewage sludge that end up in waters as the result of human activity, the Court found

17  that "mussel shells, mussel feces and other natural byproduct of live mussels do not appear to be

18  the type of materials the drafters of the Act would classify as 'pollutants.'"  *Id*.  After considering

19  Congressional intent, the Court held that "biological materials" covered by the Act were the

20  "waste product of a transforming human process" or "the waste product of a human or industrial

21  process."  *Id*. at 1017.

22          Applying the *Hammersley* definition here, the Department's introduction of live fish for

23  stocking lakes cannot be considered the waste product of a transforming human or industrial

24  process.  In other words, the fish entering a lake are not the by-product of a human activity, like

25  running a hydro-electric facility (*National Wildlife Federation v. Consumers Power Co.*, 862 F.2d

26  580 (6th Cir. 1988)), spreading liquid manure on a field (*Concerned Area Residents for the Env't*

27  *v. Southview Farm*, 34 F.3d 114, 117 (2d. Cir. 1994)), or taking fish from a water body, processing

28  the fish and returning the heads, fins and internal residuals back to that body of water (*Ass'n of*

United States District Court
Northern District of California

3

United States District Court
Northern District of California

1    *Pacific Fisheries v. EPA*, 615 F.2d 794, 802 (9th Cir. 1980)).  Instead, introduction of the live fish

2    is the purpose and goal of the Department's stocking program.

3        The fact that plaintiffs in this case have alleged that the Department's stocking "alters the

4    physical and biological integrity" of the lakes does not change this Court's conclusion.  While the

5    Court in *Hammersley* felt their analysis was "strengthened" by the lack of allegation or evidence

6    in the record that the shellfish discharge caused any identifiable harm to Puget Sound and issued

7    their decision with the "caveat" that the record did not indicate that the materials discharged by the

8    shellfish were released in a concentration significantly greater than would otherwise be found in

9    Puget Sound, 299 F.3d 1017 n.9, the Court looked to the harm issue only as added support for

10    their interpretation of the ambiguous statutory term "biological materials."  This Court is not

11    charged with construing "biological materials" anew, but simply applying the *Hammersley*

12    Court's definition of "biological materials" as a "waste product of a human or industrial process."

13        Similarly, the fact that some of the live fish being stocked are not native or could not

14    otherwise be naturally sustained does not alter the Court's conclusion.  In *Northwest*

15    *Environmental Defense Center v. EPA* (*NEDC*), 537 F.3d 1006 (9th Cir. 2008), in determining

16    that the EPA acted *ultra vires* in excluding marine ballast discharges from CWA coverage, the

17    Ninth Circuit found in passing that the term "biological materials" includes "invasive species."  *Id*.

18    at 1021.  That finding, however, does not undermine the holding in this case because the invasive

19    species at issue there – non-native zebra mussels and other organisms – were discharged as waste

20    in the ballast water of container ships.  The *NEDC* Court's passing reference is not inconsistent

21    with *Hammersley*, because discharge of the organisms at issue was the waste product of a human

22    or industrial process.

23        Plaintiffs also rely on *U.S. Public Interest Research Group v. Atlantic Salmon of Maine*,

24    215 F.Supp.2d 239 (D. Me. 2002).  In that case the District Court found that release of non-native

25    salmon, which escaped from a salmon farm, was discharge of a pollutant under the CWA.  *Id*. at

26    247.  However, the District Court's holding is likewise consistent with *Hammersley*.  The escaped

27    non-native salmon – along with the other pollutants including copper, chemicals, and antibiotics,

28    *id*. at 248 – were waste products from a human or industrial process.

1    There is another parallel with *Hammersley*.  There, the Ninth Circuit noted that Gallo

2    mussels were not native to Puget Sound, but were introduced in 1970s or 1980s.  That fact did not

3    alter the Court's conclusion that discharges from the non-native mussels were not pollutants under

4    the CWA. 299 F.3d at 1010 & n.1.[2] So it is with the planting of non-native fish here.

5        For the foregoing reasons, the Court finds that the claims in the SAC regarding the

6    introduction of fish are not actionable under the CWA.

7    **II.  INTRODUCTION OF WATER**

8        Defendants also argue that plaintiffs' allegations regarding the release of water (*see e.g.*,

9    "[t]he water used to release fish can harbor non-native species of aquatic plans, [sic] invertebrates,

10    and fish that is introduced into the lake being stocked," SAC ¶ 16) is not actionable because there

11    are no further allegations in the complaint regarding the release of water and the charging

12    allegations allege a violation of the CWA only because of "[t]he addition of these fish." *Id*. ¶ 18;

13    *see* Motion at 14.[3]  Plaintiffs do not address this argument in their opposition and did not address it

14    at oral argument.[4]  The Court finds that despite multiple opportunities to address this deficiency in

15    their pleadings, plaintiffs have not done so.  Given that plaintiffs have not opposed defendants'

16    argument on its substance, the Court finds that plaintiffs' allegation regarding the release of water

17    (associated with the release of fish) is not actionable as pled.

18

19

20

21

22    [2]  The Court notes that the alleged environmental impacts of the Department's stocking program are currently being reviewed, as plaintiff Wild Earth Advocates and others challenged the
23    Department's Environmental Impact Report/Environmental Impact Statement under the California Environmental Quality Act.  *See* Exhibit C to Defendants' Request for Judicial Notice (Docket
24    No. 20-4).  This Court is bound to apply the *Hammersley* Court's definition of biological materials rather than attempt a review of the alleged environmental impacts of stocking live fish in
25    Californian lakes.
     [3]  Defendants also argue that the transfer of water (and any materials already in that water) is
26    exempt from the requirement to obtain a Clean Water Act permit. 40 C.F.R. § 122.3(i).
     [4]  This issue was also raised in the Motion to Dismiss the First Amended Complaint and not
27    addressed by plaintiffs either in their opposition to that motion or in their Second Amended Complaint.  *See* Docket No.20 at 8; Docket No. 25 at 2 n.1.  The arguments raised in the prior
28    motion to dismiss were not ruled on substantively and the motion was denied as moot in light of plaintiffs' request to file the Second Amended Complaint.  *See* Docket No. 42.

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendants' Motion to Dismiss and DISMISSES this case WITH PREJUDICE.

**IT IS SO ORDERED**.

Dated: November 4, 2013



WILLIAM H. ORRICK
United States District Judge